UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ELBERT WHITE, ROBERT M. COWSERT and his spouse, NAOMI B. COWSERT, and WILLIAM D. HOLECZY, on behalf of themselves and all other persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FIRSTENERGY GENERATION, LLC, FIRSTENERGY CORP. WELFARE PLAN, and THE FIRSTENERGY CORP. RETIREMENT HEALTH BENEFITS TRUST FOR REPRESENTED EMPLOYEES (f/k/a OHIO EDISON COMPANY POSTRETIREMENT HEALTH BENEFITS TRUST FOR REPRESENTED EMPLOYEES), <br><br> Defendants. | CASE NO. 4:14-CV-2158 <br><br><br> JUDGE BENITA Y. PEARSON <br><br><br><br> **Class Action** <br> **Jury Trial Demanded** |

**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF LABOR CONTRACTS AND ERISA PLAN**

Plaintiffs Elbert White, Robert M. Cowsert and his spouse, Naomi B. Cowsert, and William D. Holeczy ("Class Representatives" or "Plaintiffs"), on behalf of themselves and all other persons in the proposed class described in this Amended Complaint, by their attorneys, bring this action against Defendants FirstEnergy Generation, LLC ("FirstEnergy" or the "Company"), the FirstEnergy Corp. Welfare Plan (the "Plan"), and the FirstEnergy Corp. Retirement Health Benefits Trust for Represented Employees (f/k/a Ohio Edison Company PostRetirement Health Benefits Trust for Represented Employees) (the "VEBA"), and aver as follows:

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), Plaintiffs bring this class action lawsuit on behalf of themselves and a similarly situated group of retirees (all of whom were represented in collective bargaining by the International Brotherhood of Electrical Workers Local No. 272, which is referred to herein as "IBEW Local 272" or the "Union" until their retirement) and eligible spouses, surviving spouses and dependents.

## THE PARTIES

2. Plaintiff and Class Representative Elbert White is an adult resident of East Liverpool, Ohio. From his date of hire in 1977 by a FirstEnergy predecessor until his retirement, Plaintiff White worked at the electrical generation plant that FirstEnergy operated in Shippingport, PA, which is known as the Bruce Mansfield plant, where he was a member of the bargaining unit represented by IBEW Local 272. Plaintiff White's last day of work at the Company was in December 2004, and he elected to commence his pension benefits on February 1, 2005. Under the terms of a collectively bargained agreement between FirstEnergy and IBEW Local 272 applicable at the time of his retirement, Plaintiff White and his spouse are entitled to retiree health care benefits and/or contributions as set forth in this Amended Complaint.

3. Plaintiff and Class Representative Robert M. Cowsert is an adult resident of East Liverpool, Ohio. From his date of hire in 1977 by a FirstEnergy predecessor until his retirement, Plaintiff Cowsert worked at the electrical generation plant that FirstEnergy operated in Shippingport, PA, which is known as the Bruce Mansfield plant, where he was a member of the bargaining unit represented by IBEW Local 272. Plaintiff Cowsert retired from the Company on July 31, 2003. Under the terms of a collectively bargained agreement between FirstEnergy and IBEW Local 272 applicable at the time of his retirement, Plaintiff Cowsert and his wife, Plaintiff

and Class Representative Naomi B. Cowsert, are entitled to retiree health care benefits and/or contributions as set forth in this Amended Complaint.

4.	Plaintiff and Class Representative William D. Holeczy is an adult resident of Moundsville, West Virginia.  From his date of hire in 1975 by a FirstEnergy predecessor until his retirement, Plaintiff Cowsert worked at the electrical generation plant that FirstEnergy operated in Shippingport, PA, which is known as the Bruce Mansfield plant, where he was a member of the bargaining unit represented by IBEW Local 272.  Plaintiff Holeczy retired from the Company on February 1, 2004.  Under the terms of a collectively bargained agreement between FirstEnergy and IBEW Local 272 applicable at the time of his retirement, Plaintiff Holeczy and his spouse are entitled to retiree health care benefits and/or contributions as set forth in this Amended Complaint.

5.	Defendant FirstEnergy is an Ohio corporation with its principal place of business at 76 S. Main Street, Akron, OH  44308.  FirstEnergy is, and at all relevant times was, a wholly owned subsidiary of FirstEnergy Corporation, and it operates electric generation plants in several states, including the Bruce Mansfield plant.  It is the Plan Sponsor and the Plan Administrator of the Plan, within the meaning of § 3(16)(A)-(B) of ERISA, 29 U.S.C. § 1002(16)(A)-(B), and is a named fiduciary with respect to the Plan.  FirstEnergy is sued as the responsible employer under the labor contracts, as well as in its capacities as the Plan's sponsor, administrator, and fiduciary.

6.	The Plan is an "employee benefit plan" and "employee welfare benefit plan" within the meaning of § 3(1) and (3) of ERISA, 29 U.S.C. § 1002(1) and (3).  The Plan is sued as a party needed for just adjudication under Rule 19 of the FRCP, as well as a party responsible for providing benefits and/or contributions.

7.      The VEBA is a trust which was created as of July 1, 1995, to fund postretirement health benefits and/or contributions to represented employees, including Plaintiffs and members of the Class.

## STATEMENT OF FACTS

8.      The Bruce Mansfield plant is a coal-fired power plant.

9.      In 2006, FirstEnergy was cited for failure to maintain a plan to address the presence of arsenic in fly ash in violation of regulations promulgated by the Occupational Safety and Health Administration ("OSHA") of the U. S. Department of Labor.  In 2012, FirstEnergy was cited for failure to provide for its workers protective equipment where necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants capable of causing injury or impairment in any part of the body through absorption, inhalation or physical contact.  Over the last 10 years, OSHA has noted high levels of sulfur dioxide emitted from the Bruce Mansfield plant.  Other hazardous chemicals found in heavy concentrations at the Bruce Mansfield plant include ammonia, sulfur bisulfate, arsenic, lead and mercury.  Wipe sampling performed by FirstEnergy in 2007 showed arsenic levels that exceeded EPA's health-based benchmark standard for arsenic. Testing of employees from 1979 through 2006 showed that many employees had levels of arsenic in their systems far in excess of permissible exposure levels established by OSHA.

10.     In a 2009 list of diagnosed medical problems affecting members of IBEW Local 272, approximately half of all workers had been diagnosed with serious ailments including hypertension, heart disease and a wide range of respiratory ailments, including asthma, airway obstruction, and malignant hypertension, and malignancies, including colon, liver, bladder,

thyroid, skin and kidney cancers. Many of these diseases have been linked to the pollutants identified in the previous paragraph.

11. These exposures date back many years, including the time period before 2005, when Plaintiffs and members of the Class worked at the facility.

12. In October 2011, FirstEnergy notified its employees for the first time about asbestos-containing materials throughout the plant that had been in place throughout the time that Plaintiffs and members of the class had worked in the Plant. Without knowledge of the location of asbestos-containing materials in the plant, employees -- including Plaintiffs and members of the Class -- did not take precautions to protect themselves from exposure to asbestos, placing Plaintiffs and class members at risk of serious diseases, including asbestosis, lung cancer and mesothelioma.

13. The exposures and resulting health problems were but one reason that IBEW Local 272 and members of the Class considered retiree health benefits to be so important.

14. IBEW Local 272 and FirstEnergy (or its predecessors) have been parties to a series of collective-bargaining agreements, the most recent of which is effective by its terms from December 5, 2009 to February 15, 2013 (2009 Agreement).

15. In Article XVIII, Section 3 of the agreement effective by its terms from February 16, 1996 through February 15, 1999 (1996 Agreement), the Company agreed to "have in effect a Group Health Insurance Plan for each full-time regular employee" (including employees represented by IBEW Local 272) as part of the Flexible Benefits Plan and further agreed that the Company would pay the costs of coverage for each individual active employee and eligible family members enrolled in the Managed Preferred Provider Plan. The Company also agreed to pay any increase in the cost of coverage during the term of the 1996 Agreement. If an employee

5

enrolled in another health care plan offered by the Company that exceeded the cost of the Managed Preferred Provider Plan, the employee paid the difference in cost between the two plans.

 16. The 1996 Agreement also provided that:

> Effective January 1, 1996, the Company's contribution for health coverage for a retiree shall be based on such retiree's age and service at the time of retirement, the eligibility of the retiree and his eligible family members for Medicare and the cost of the Managed Preferred Provider Plan according to the following tables:

| NO RETIREE OR DEPENDENT ELIGIBLE FOR MEDICARE | | | |
|---|---|---|---|
| | Company Contribution ($) by Coverage | | |
| Minimum Points (Age + Service) | Single | Two-Person | Family |
| 85 | $1.00 \times (C) - M$ | $1.00 \times (C) - 2 \times (M)$ | $1.00 \times (C) - 2 \times (M)$ |
| 75 | $.75 \times (C) - M$ | $.75 \times (C) - 2 \times (M)$ | $.75 \times (C) - 2 \times (M)$ |
| 65 | $.50 \times (C) - M$ | $.50 \times (C) - 2 \times (M)$ | $.50 \times (C) - 2 \times (M)$ |

| AT LEAST ONE RETIREE OR DEPENDENT ELIGIBLE FOR MEDICARE | | | | |
|---|---|---|---|---|
| | Company Contribution ($) by Coverage | | | |
| Minimum Points (Age + Service) | Single | 1 Med. Elig. 1 Med. Inelig. | Dual Medicare | Family |
| 85 | $1.00 \times (C)$ | $1.00 \times (C) - (M)$ | $1.00 \times (C)$ | $1.00 \times (C) - (M)$ |
| 75 | $.75 \times (C)$ | $.75 \times (C) - (M)$ | $.75 \times (C)$ | $.75 \times (C) - (M)$ |
| 65 | $.50 \times (C)$ | $.50 \times (C) - (M)$ | $.50 \times (C)$ | $.50 \times (C) - (M)$ |

> Where: M = Amount equivalent to the Medicare Part B premium
>      C = Cost of coverage in Managed Preferred Provider Plan

A true and correct copy of the provision and table set forth in the 1996 Agreement is attached hereto as Exhibit A.

17. The 1996 Agreement also provided that "Where practical, the Company will endeavor to offer retirees the same health care plans as active employees."

18. In Appendix G of the 1996 Agreement, the Company agreed that, effective February 16, 1996, it would establish a Voluntary Employee Beneficiary Association ("VEBA") Post-Retirement Plan for the benefit of employees covered by the agreement and that the VEBA would be maintained so as to provide for the funding of post-retirement health benefits and/or contributions for current and future retired employees, their spouses, dependents and beneficiaries.

19. Accordingly, the VEBA was established to pre-fund post-retirement health care benefits for current and future union retirees, and was required to be administered in accordance with Section 501(c)(9) of the Internal Revenue Code so as to be exempt from taxation under Section 501(a) of the Internal Revenue Code.

20. The VEBA must be maintained pursuant to a collective bargaining agreement, within the meaning of Section 1.419A-2T of the Temporary Treasury regulations, so as to be exempt from taxation under IRC § 501(a).

21. At least some portion of the Company's liability for retiree healthcare is pre-funded through the VEBA in order for FirstEnergy to recover post-retirement medical costs from Federal Energy Regulatory Commission ("FERC") customers.

22. The VEBA, as amended on October 30, 2000, was established for the exclusive benefit of represented employees who are or may be eligible for post-retirement health benefits under the Plan, their spouses and eligible dependents, and their designated beneficiaries.

23. The VEBA was established because the Company recognizes the need to provide certain post-retirement health benefits to eligible current and retired represented employees and their spouses and dependents.

24. The assets of the VEBA may only be used to provide benefits under the Plan and may not be returned to the Company.

25. Substantially the same provisions as in the 1996 Agreement concerning health care benefits for active employees and retirees, as well as Appendix G providing for the VEBA, ***existed in agreements subsequent*** to the 1996 Agreement, including but not limited to the agreement effective by its terms from February 16, 1999 through February 15, 2001 (the "1999 Agreement") and the agreement effective by its terms from February 16, 2001 through February 15, 2004 (the 2001 Agreement), which was extended through February 4, 2005 by a Stipulation of Settlement between First Energy and the Union on January 28, 2005.

26. The Company informed Plaintiffs and the members of the proposed class who reached the "magic number" of 85, that is, a combination of age and years of service that totaled at least 85, that they were entitled to lifetime medical coverage and/or contributions from the Company for themselves, their eligible spouses, surviving spouses and dependents, along with their monthly pension benefit.

27. When Plaintiffs and members of the proposed class who participated in the Company's health plan retired, they were required to contribute a "Medicare equivalent," and the cost of Medicare Part B coverage, for themselves and their spouses was automatically deducted from their monthly pension benefit payments. Plaintiffs and class members continued to contribute this "Medicare equivalent" until they became eligible for Medicare. The Company otherwise paid the cost of coverage.

8

28. When Plaintiffs and members of the proposed class became eligible for Medicare, the "Medicare equivalent" was no longer deducted from the monthly pension benefit payments.

29. In 2012, the Company established a Health Reimbursement Account ("HRA") for each Plaintiff and Medicare-eligible members of the proposed class and deposited $3000 per each Plaintiff and member of the proposed class per year. The funds in the HRA could be used by each Plaintiff and each such member of the proposed class to pay for health insurance premiums.

30. In a notice dated July 14, 2014, First Energy announced that effective January 1, 2015, it would discontinue company-subsidized health care for all retirees or their surviving spouses and would no longer make contributions toward health insurance premiums or HRAs after December 21, 2014. A true and correct copy of the notice dated July 14, 2014 is attached hereto as Exhibit B.

31. As Plaintiffs allege in Count I, since the rights of retirees and eligible spouses, surviving spouses and dependents (collectively, "Class Members") to retiree health benefits were created through agreements between a labor organization and an employer, violation of those agreements is actionable in this Court under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

32. Plaintiffs bring Counts II and III pursuant to § 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3). In Count II, Plaintiffs seek a declaration that their rights to retiree health benefits provided under agreements have vested, and the negotiated Plan terms cannot be unilaterally modified or terminated by Defendants. Alternatively, in Count III, Plaintiffs seek appropriate equitable relief for Defendant FirstEnergy's breach of the fiduciary duties owed to them. As to

these Counts, Plaintiffs seek an injunction prohibiting such modification or termination, as well as equitable relief to remedy the reduction in benefits and breach of fiduciary duties.

## JURISDICTION AND VENUE

33. As all three Counts raise federal questions, this Court has jurisdiction over them under 29 U.S.C § 1331.  The Court also has jurisdiction over Count I under § 301 of the LMRA, 29 U.S.C. § 185, and over Counts II and III under § 502(e)(1) and (f) of ERISA, 29 U.S.C. § 1132 (e)(1) and (f).  Venue in this judicial district is proper under § 301 of LMRA, 29 U.S.C. § 185, and § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), wherein the Plaintiffs White and the Cowserts, the Company, and a substantial number of class members reside.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this class action on behalf of themselves and a class of similarly situated persons, defined as follows:

> Former employees of FirstEnergy Generation Corporation, who retired on or after January 1, 1996, and before February 5, 2005, who were represented by IBEW Local 272 in collective bargaining and who, after retirement, received health care benefits and/or contributions, as well as eligible spouses, surviving spouses and dependents.

Persons meeting this definition are herein referred to as "Class Members."

35. The exact number of Class Members is not presently known, but, on information and belief, it is more than 140.  Accordingly, joinder of individual Class Members in this action is impracticable.

36. The retiree health care benefits to which Class Members are entitled pursuant to the collectively bargained agreements are similar.

37. There are common questions of law and fact in this action that relate to and affect Class Members, as set forth below in Counts I, II and III of this Complaint.

38. The relief sought is common to all Class Members, as set forth below in the "Relief Requested" section of this Complaint.

39. The claims of the Class Representatives are typical of the claims of the Class Members they seek to represent insofar as they all assert, *inter alia*, that:

(a) Defendants are obligated under LMRA § 301 and ERISA to provide retiree health benefits throughout retirement, as set forth in collectively bargained agreements negotiated between IBEW Local 272 and FirstEnergy and its predecessors;

(b) Defendants cannot unilaterally terminate or reduce those benefits in violation of collectively bargained terms;

(c) FirstEnergy has a fiduciary duty to administer the Plan in accordance with its terms and solely in the interests of participants and beneficiaries, and for the exclusive purpose of providing benefits or defraying reasonable expenses of administering the Plan; and

(d) FirstEnergy breached its fiduciary duties to Plan participants by announcing reduction of Plan participants' benefits and failing to make adequate disclosures to Plan participants.

(e) All Class Members are beneficiaries of the VEBA, which must be administered for their exclusive benefit.

40. There is no conflict between the Class Representatives and other members of the Class with respect to this action.

41. The Class Representatives are able to, and will, fairly and adequately protect the interests of the Class Members. The attorneys for the Class Representatives are experienced and

capable in the field of labor law and employee benefits law, and retiree health benefits in particular, and have successfully litigated numerous class actions of a similar nature.

42. This action is properly maintained as a class action under FRCP 23(b)(2), in that Defendants have acted on grounds generally applicable to the Class by unilaterally terminating retiree health care benefits they are obligated to provide to Class Members, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

43. This action is also maintainable as a class action under FRCP 23(b)(1)(A), in that because of the uniform standards of conduct imposed by ERISA, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendants.

44. In the alternative, this action is also maintainable as a class action under FRCP (23)(b)(3), in that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## COUNT I
### Violation of Labor Agreements Actionable Under
### Section 301 of the LMRA
### (Against FirstEnergy)

45. The foregoing Paragraphs are re-alleged and incorporated by reference.

46. As noted, in the years before their retirements and at the time they retired, Class Members' retiree health benefits were the subject of labor agreements between the FirstEnergy (and its predecessors) and IBEW Local 272.  Under those labor agreements, Plaintiffs and Class Members and eligible dependents had rights to receive specified retiree health benefits that are

not subject to unilateral reduction or termination during retirement. Defendants' announced reduction of retiree health benefits infringes upon those rights.

47. Accordingly, Defendants' reduction or elimination retiree health benefits violates collectively bargained obligations owed to Plaintiffs and Class Members, and is actionable under Section 301 of the LMRA, 29 U.S.C. § 185(a).

## COUNT II

### Violation of Employee Welfare Benefit Plan Actionable Under ERISA § 502(a)
### (Against all Defendants)

48. The foregoing Paragraphs are re-alleged and incorporated by reference.

49. By taking the actions described above, Defendants violated the rights of Class Representatives and Class Members. Specifically, under the collectively bargained agreements, which are also governing Plan documents under ERISA, Class Representatives and the Class as a whole have rights to retiree health benefits that are not subject to unilateral reduction or termination during retirement. Accordingly, Defendants' announcement of unilateral reduction of benefits infringes upon and is in derogation of those rights.

50. Defendants' repudiation of the terms of the employee welfare benefit plan is actionable in this Court under ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), which allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Additionally, a participant suing under this provision is entitled to interest on any retroactive amounts awarded.

13

## COUNT III

**Breach of Fiduciary Duty under ERISA §§ 404 and 502
(Against Defendant FirstEnergy)**

51. The foregoing Paragraphs are re-alleged and incorporated by reference.

52. Plaintiffs bring this count alleging breach of fiduciary duties as an *alternative* to Count I and II, and they do so pursuant to FRCP 8(d), which provides that a complaint may assert two or more claims alternatively or hypothetically, and that a party may do so "regardless of consistency."

53. In paragraph 30 above, Plaintiffs refer to the document attached as Exhibit B -- a unilaterally drafted notice issued by the Company, stating that the Company would limit Company-subsidized monthly payments toward coverage for current retirees. That notice is not part of the FirstEnergy's agreements with IBEW Local 272 and cannot affect vested, collectively-bargained rights.

54. Specifically, at all relevant times, FirstEnergy has been a fiduciary of the Plan, as it exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

55. As a fiduciary of the Plan, FirstEnergy was obligated to discharge its duties to the Plan solely in the interests of Plaintiffs and Class Members, who are Plan participants and beneficiaries, and for the exclusive purpose of providing benefits or defraying reasonable expenses of administering the plan. These duties are violated if a fiduciary fails to make full and complete disclosure to plan participants and beneficiaries.

56. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), participants and beneficiaries may sue "to enjoin any act or practice which violates any provision of this subchapter [e.g.,

14

fiduciary provisions] or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter or the terms of the plan."

57. FirstEnergy breached its fiduciary duties through the conduct described above (including the duty to make full and complete disclosure), and Plaintiffs and Class Members will suffer actual harm in the absence of relief, as FirstEnergy has announced a drastic reduction in benefits and has taken the position that it can eliminate benefits altogether.

58. Pursuant to ERISA § 502(a)(3), Plaintiffs and Class Members are entitled to an injunction to keep benefits in place, and/or a surcharge to remedy the breach of trust committed by FirstEnergy.

59. In addition to or in the alternative to the foregoing, FirstEnergy is estopped from refusing to provide the retiree benefits set forth in the collectively bargained agreements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Certify this action as a class action, appoint Plaintiffs as Class Representatives, and appoint William T. Payne, Tybe A. Brett and Joel R. Hurt, Feinstein Doyle Payne & Kravec, LLC, and Marianne Oliver, Gilardi, Oliver & Lomupo as counsel for the Class.

B. Declare that the retiree health benefits as set forth in the applicable collectively bargained agreements between the FirstEnergy (and its predecessors) and IBEW Local 272, and in the Plan, may not be unilaterally modified or terminated by Defendants.

15

C. Enjoin Defendants from modifying or terminating the benefits they are obligated to provide to the Class Members under the terms of the applicable collectively bargained agreements and the Plan.

D. Award Class Representatives and Class Members such benefits, pursuant to the terms of applicable collective bargaining agreements and the Plan, and/or monetary damages (plus interest), as necessary to restore them to the position in which they would and should have been in but for Defendants' contractual and statutory violations.

E. Order a surcharge to remedy the breach of trust committed by FirstEnergy.

G. Order disgorgement of any unjust enrichment.

H. Award Plaintiffs reasonable attorneys' fees and costs incurred in this action.

I. Award Class Members pre-judgment and post-judgment interest on any retroactive amounts awarded.

J. Grant such further relief as may be deemed necessary and proper.

## JURY DEMAND

Plaintiffs request a jury trial of all issues so triable.

|  | Respectfully submitted, |
|---|---|
| Dated:  December 17, 2014 | s/ Tybe A. Brett |
|  | Tybe A. Brett |
| OF COUNSEL: | tbrett@fdpklaw.com |
|  | William T. Payne |
| Marianne Oliver | wpayne@fdpklaw.com |
| moliver@lawgol.com | Joel R. Hurt |
|  | jhurt@fdpklaw.com |
| GILARDI, OLIVER & LOMUPO |  |
| The Benedum Trees Building | FEINSTEIN DOYLE PAYNE |
| 10th Floor | & KRAVEC, LLC |
| 223 Fourth Avenue | Allegheny Building, Suite 1705 |
| Pittsburgh, PA 15222 | 429 Forbes Avenue |
| (412) 391-9770 (Tel) | Pittsburgh, PA 15219 |
| (412) 391-9780 (Fax) | (412) 281-8400 (Tel) |
|  | (412) 281-1007 (Fax) |

*Attorneys for Plaintiffs*